## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

**NICHOLAS HANEY,**
  Plaintiff,

**v.**

              **Case No. 1:23-cv-1026-CLM**

**MOHAMED SOW,**
  Defendant.

## MEMORANDUM OPINION

Nicholas Haney sues Officer Mohamed Sow for allegedly violating his Fourth Amendment rights. Haney claims Officer Sow subjected him to an unreasonable search and seizure when arresting him under a recalled child support warrant. Officer Sow now moves for summary judgment on all counts. (Docs. 42, 45). He also moves to strike certain evidentiary materials Haney filed in support of his brief in opposition to summary judgment. (Doc. 54). For the reasons within, the court **GRANTS** Officer Sow's motion for summary judgment on all counts and **DENIES** his motion to strike **AS MOOT**.

## BACKGROUND

Officer Sow arrested Haney while working for the Talladega Police Department ("TPD") and executing a child support warrant issued by Talladega County. So the court starts by discussing TPD's role in enforcing arrest warrants issued by Talladega County, then lays out the facts and Haney's claims.

### A. TPD's Role in Enforcing Talladega County Arrest Warrants

Two law enforcement agencies operate in the City of Talladega. One is TPD, which the City operates. The other is the Talladega County Sheriff's Office, which the County operates. As one would expect, TPD

cooperates with Talladega County to execute arrest warrants the County has issued. To bring about that cooperation, the Talladega County Emergency Management Communications District ("Central Dispatch") acts as a hub for officer communications. Central Dispatch radios TPD officers about outstanding Talladega County warrants when they interact with citizens and suspects. Because TPD does not issue, recall, store, maintain, or track the status of Talladega County warrants, its officers rely exclusively on Central Dispatch for warrant information. If Central Dispatch tells an officer a warrant is "in hand," that means the warrant is active—not recalled—and a physical copy is in Central Dispatch's possession. (Doc. 43-4, p. 2; doc. 43-6, p. 3).

Central Dispatch keeps physical copies of all warrants, including child support warrants, that Talladega County issues. Only Talladega County judges can issue or recall child support warrants. When a judge issues a child support warrant, the Talladega County Sheriff's Office enters the warrant information into its private records system, marks the warrant as active ("A"), and sends a hardcopy to Central Dispatch. If a judge wants to recall a child support warrant, she will have the appropriate Talladega County Clerk upload the warrant recall in Alabama's State Judicial Information System ("SJIS"). The Clerk will then take a physical, signed copy of the warrant recall to the Talladega County Sheriff's Office. (Doc. 43-10, p. 3).

Once the Talladega County Sheriff's Office receives a signed warrant recall, it will (a) change the warrant's status in its system from active to recalled; (b) complete an "NCIC cancellation sheet"; and then (c) send physical copies of the NCIC cancellation sheet and warrant recall to Central Dispatch. (*Id.* at pp. 3-4). And when Central Dispatch receives the warrant recall, it will attach it to the original warrant and return the documents to the Talladega County Sheriff's Office. At that point, Central Dispatch—and by extension, TPD officers relying on Central Dispatch— will know that a previously active warrant has been recalled.

**B.    Haney's Warrant and Arrest**

On August 20, 2020, a Talladega County judge issued a child support warrant for Haney. The events that followed complied with the procedure outlined above: the Talladega County Sheriff's Office received the warrant; entered the warrant's information into its private records system; marked the warrant as active ("A"); and then sent a physical copy to Central Dispatch. Central Dispatch received Haney's child support warrant on September 8, 2020. For nearly two years, Haney's warrant went unserved.

That changed on August 14, 2022, when Haney met Officer Sow. On that day, Officer Sow and two other TPD officers, Officers Evitts and Sharp, were working patrol when Central Dispatch sent them to Marvin's home improvement store after a Marvin's employee called 911 to report that Haney was causing a disturbance. Before the officers arrived, Central Dispatch advised them there was a possible "J4" (*i.e.*, warrant) from Talladega County for a "Nicholas Haney." (*See* Doc. 43-3; doc. 43-4, p. 3). On the radio, Officer Evitts can be heard asking Central Dispatch to confirm the warrant. Central Dispatch replied that the warrant was "in hand, as long as it's the right Nicholas Haney." (*See* doc. 43-3).

Officer Evitts arrived at the store first and started speaking with the store employee and Haney. Officer Evitts asked both men for their identification. Both men complied with his request. Officers Sow and Sharp then arrived. While Officers Evitts and Sow talked to Haney and the store employee, Officer Sharp provided Central Dispatch with Haney's driver's license number. Central Dispatch advised Officer Sharp that Haney was the right Nicholas Haney with an outstanding child support warrant.

Having confirmed Haney's identity, Officer Sharp gestured to Officers Sow and Evitts to take Haney into custody. Officer Sow handcuffed Haney. Haney asked, "what am I going to jail for?" (*See* doc. 43-8). Officer Evitts informed Haney it was because of a "child support warrant through the County." (*Id.*). Haney told the officers that they

"needed to check that," to which Officer Evitts replied that "he already checked it." (*Id.*). Haney called the Officers "f-ing fools," and continued to tell them to check the warrant. (*Id.*).

The officers escorted Haney out of the store and into the parking lot by Officer Sow's patrol car. While Officer Sow positioned Haney against his car, Officer Evitts asked Officer Sharp "is [the warrant] confirmed?" (*Id.*). Central Dispatch told Officer Sharp that TPD would need to transport Haney because Talladega County did not have units close by. All the while, Haney continued to tell the officers that there was no warrant for him. He also told the officers that he has a "mechanical device in his neck," he has "f-ing cancer," and he needs to "take [his] medicine." (*Id.*). Haney then told the officers that his warrant was dropped three weeks ago. To be certain Haney's warrant was active, Officer Sharp walked away from Officer Sow's car and radioed Central Dispatch again, asking it to confirm that the warrant was in hand. Central Dispatch replied: "10-4, in hand." (*See* doc. 43-7).

Officers Evitts and Sharp told Officer Sow that he was "good" to transport Haney because the warrant was in hand. (Doc. 43-4, p. 6; doc. 43-5, p. 5). So Officer Sow resumed the arrest and put Haney in the back of his patrol car. Central Dispatch radioed the officers one last time to inform them that a different warrant for Haney had previously been recalled, but the child support warrant was still in hand. Having received another confirmation for Haney's active warrant, Officer Sow completed the arrest and took Haney to the Talladega County Jail.

After Haney's arrest, Talladega County Sheriff, Jimmy Kilgore, and the Sheriff's Office's Chief Clerk, Janet Gaither, facilitated Haney's release "so he could timely take critical cancer medications." (Doc. 43-10, p. 6). According to Ms. Gaither, Haney was released for this reason. Haney disputes Ms. Gaither's testimony and says that he was "advised by jail personnel that [he] was being released because [he] did not have a child support warrant." (Doc. 48-1, pp. 1-2).

Nearly all the relevant bookkeeping methods for Talladega County warrants confirm that Haney's child support warrant was never recalled. For example, the physical copy of Haney's warrant does not mention a recall. Instead, it notes that the warrant was served on August 14, 2022—the day that Officer Sow arrested Haney. Further, the Talladega County Sheriff's Office's private records system reflects the status of Haney's child support warrant as served ("S") and not recalled ("R").

The only bookkeeping irregularity that would support Haney's contention that his warrant was recalled is an SJIS entry made by the Talladega County District Court Clerk, Beverly Booker. The day after Haney's arrest, Ms. Booker made four SJIS entries for Haney's warrant. The first of those entries shows that Haney's warrant was recalled on August 20, 2020—the same day the Talladega County judge issued it. The second entry shows that the warrant was also served on August 20, 2020. Ms. Booker says in an affidavit that these entries were a clerical error. She also says that her final two entries reflect the correct information: Haney was arrested on August 14, 2022, and his warrant was served that same day. According to Ms. Booker, the only reason the first two, inaccurate entries remain in SJIS is "because [her] SJIS … user privileges do not permit [her] to delete or modify any entry." (Doc. 43-11, p. 4). Ms. Booker states that she had no information indicating that Haney's child support warrant had been recalled.

## C.    Haney's Claims and Officer Sow's Motions

Haney asserts three claims under 42 U.S.C. § 1983 against Officer Sow. In Counts 1 and 2, Haney contends that Officer Sow violated his Fourth Amendment rights by seizing and searching him without probable cause or a valid warrant. (Doc. 25, pp. 4-5). In Count 3, Haney alleges that Officer Sow violated his Fourth Amendment rights by seizing his driver's license without due process. (*Id.*).

Officer Sow seeks summary judgment on all three claims (docs. 42, 45). He also asks to strike certain evidentiary materials Haney submitted in support of his brief in opposition to summary judgment (doc. 54).

## LEGAL STANDARD

In reviewing a motion for summary judgment, this court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *See Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 966 (11th Cir. 2002). Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

Again, Haney brings three claims against Officer Sow under § 1983 for violating his Fourth Amendment rights. But Haney doesn't specify whether he sues Officer Sow in his individual capacity or official capacity. So the court will analyze Haney's claims under both theories of liability.

### A.   Official Capacity

"[O]fficial capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent[.]" *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). So for Haney to hold Officer Sow liable in his official capacity, Haney must establish liability against the City of Talladega. More specifically, Haney must show that (1) Officer Sow violated his constitutional rights; (2) the City of Talladega had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy or custom caused the violation. *Land v. Sheriff of Jackson Cnty., Fla.*, 85 F.4th 1121, 1129 (11th Cir. 2023).

The court needn't analyze Haney's claims at step one because Haney's claims fail under steps two and three. Indeed, Haney sued the City of Talladega, and the court already dismissed that claim. (*See* docs. 35, 36). Even after amending his original complaint to identify a municipal policy relevant to his claims, Haney failed to link that policy to

Officer Sow's actions. (*See* doc. 35, p. 4). And Haney has said nothing about the City of Talladega in his brief in opposition at the summary judgment stage. So the record is devoid of an allegation or evidence that the City of Talladega enforced a custom or policy that caused the alleged violation of Haney's rights. As a result, Haney's claims against Officer Sow in his official capacity fail as a matter of law.

## B.     Individual Capacity

That leaves Haney with bringing his claims against Officer Sow in his individual capacity. Officer Sow argues that, under this theory, Haney's claims fail because he is entitled to qualified immunity. The court agrees.

The qualified immunity doctrine "seeks to balance 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they performed their duties reasonably.'" *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). To that end, qualified immunity shields a public official, like a police officer, from liability when they are acting within the scope of their discretionary authority unless a plaintiff can show that (1) the official violated a constitutional right and (2) the right was clearly established at the time of the alleged violation. *Bolton v. Wood*, 682 F. Supp. 3d 1304, 1315 (N.D. Ga. 2023) (citing *Whittier v. Kobayashi*, 581 F.3d 1304, 1308 (11th Cir. 2009)). So if Officer Sow shows that he was acting within the scope of his discretionary authority when searching and arresting Haney, the burden shifts to Haney to show that Officer Sow violated his clearly established constitutional rights. *See Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017).

1. <u>Discretionary Authority</u>: An officer acts within his discretionary authority when he takes actions (1) "pursuant to the performance of his duties," and (2) "within the scope of his authority." *See Hinson*, 927 F.3d at 1116 (quoting *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994)). Under that standard, Officer Sow acted within his discretionary authority

when he searched and arrested Haney while on duty for TPD. *See Hinson*, 927 F.3d at 1116 (stating that an officer acts within their discretionary authority while on duty and "conducting arrest and investigative functions").

Because Office Sow has established that he was acting with the scope of his discretionary authority, the burden shifts to Haney to demonstrate that qualified immunity is inappropriate.

2. <u>Alleged Constitutional Rights Violations</u>: Starting with Count 1, Haney contends that Officer Sow violated his Fourth Amendment right to be free from an unreasonable seizure when Officer Sow arrested him "without arguable probable cause and/or a warrant[.]" (Doc. 25, pp. 4-5). But Officer Sow *did* have probable cause in the form of a valid warrant. Indeed, the Chief Clerk of the Talladega County Sheriff's Office, Ms. Gaither, explained in her affidavit that a judge issued Haney's child support warrant on August 20, 2020, and that the Talladega Sheriff's Office and Central Dispatch followed proper protocol in maintaining and storing that warrant after it was issued. (*See* doc. 43-10, pp. 4-5). Plus, Ms. Gaither's testimony is corroborated by the physical warrant documents. (*See id.* at pp. 9, 13-14).

To be sure, Haney is correct that Ms. Booker's SJIS entry indicates that his child support warrant was recalled on August 20, 2020. But Ms. Booker clarified in her affidavit that this entry was merely a clerical error she made after Haney's arrest and that she didn't possess any information to suggest Haney's warrant was ever recalled. (*See* doc. 43-11, p. 3). Haney hasn't disputed Ms. Booker's explanation for her SJIS entry, so the court assumes that Ms. Booker is telling the truth. Thus, the undisputed facts show that Officer Sow arrested Haney while executing a valid child support warrant. Officer Sow could not have violated Haney's Fourth Amendment rights by doing so. *See Williams v. Aguirre*, 965 F.3d 1147, 1162 (11th Cir. 2020) (stating that "an officer ordinarily does not violate the Fourth Amendment when he executes a facially valid arrest warrant,

regardless of whether the facts known to the officer support probable cause").

Even if Haney's warrant had been recalled before his arrest, Officer Sow would still receive qualified immunity because he had arguable probable cause to make the arrest. "To receive qualified immunity protection, an officer need not have actual probable cause but only arguable probable cause. Because only arguable probable cause is required, the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003) (internal citations omitted). The undisputed facts, including the body camera footage and Central Dispatch radio communications, show that Officers Sharp, Evitts, Sow checked the status of Haney's warrant at least three times before completing the arrest. Each time the officers checked, Central Dispatch informed them that Haney's warrant was "in hand." So based on the information the officers possessed, there was arguable probable cause to arrest Haney.

Because Officer Sow had probable cause to arrest Haney, Haney's remaining claims fail as a matter of law. Haney's unlawful search claim in Count 2 fails because Officer Sow's search of Haney was incident to the arrest and couldn't have violated Haney's Fourth Amendment rights. *Scott v. City of Miami*, 139 F.4th 1267, 1278 (11th Cir. 2025); *see also Riley v. California*, 573 U.S. 373, 382-85 (2014) (reaffirming the "search incident to arrest doctrine"). Likewise, Officer Sow didn't violate Haney's Fourth Amendment rights by retaining Haney's driver's license after the lawful arrest, so Haney's property seizure claim in Count 3 fails. *See Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009).

—

Haney's § 1983 claims against Officer Sow fail as a matter of law. So the court **will grant** Officer Sow's motion for summary judgment on

all counts. Given this ruling, the court needn't decide Officer Sow's motion to strike and **will deny** it **as moot**.

## CONCLUSION

For the reasons above, the court **GRANTS** Officer Sow's motion for summary judgment on all counts. (Doc. 42) and **DISMISSES** Haney's claims **WITH PREJUDICE**. Because the court is granting Officer Sow's motion for summary judgment, it **DENIES** Officer Sow's motion to strike **AS MOOT.** (Doc. 54). The court will enter a separate order carrying out its ruling and closing this case.

**DONE** and **ORDERED** on March 23, 2026.

_____

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE